■ In the Matter of the Claim of WILLIAM DUNN, Respondent, against VICTOR OTTILIO & SONS, Respondent, and CENTRAL SURETY AND INSURANCE CORP., Appellant. WORKMEN'S COMPENSATION BOARD, Respondent.— Appeal by alleged carrier (hereinafter termed "the carrier") from a decision and award of the Workmen's Compensation Board filed March 16, 1953. The carrier brings up for review, also, a board decision filed June, 11, 1952, holding, in effect, that a valid contract of workmen's compensation insurance was in force on the date of the injury, that holding being the sole issue presented here. Employer, a construction contractor, had for some seven years placed with the same agent all his insurance coverage, the premiums aggregating $7,000 to $8,000 per year and being billed monthly. In 1949, he became subcontractor for certain work and, according to his testimony, took a copy of the contract to the agent and told him to "protect me from beginning to end", whereupon the policy of the carrier here involved was issued to him. He testified that in December he told the agent that because of the weather he had suspended work until spring, and the agent thereupon caused the policy to be cancelled. There was evidence that when work was about to be resumed in April, 1950, employer's secretary called a clerk in the agent's office and told her that the employer was "getting ready to go back to the job in Poughkeepsie" and instructed her to take care of the insurance, "because the boys were going to the job with the equipment", to which the clerk replied that it would be taken care of. The accident and injury here involved occurred about two weeks later, at which time no policy had been delivered. The employer personally reported

the accident to the agent and the board was entitled to find that at that time the agent called the carrier and said that compensation had been ordered and asked if the policy had come through. The policy was subsequently delivered but was dated the day following the accident. The agent conducted a substantial volume of business by telephone and the coverage of the employer here was customarily ordered in that way. The agent had six employees, supplied with six telephones, who, in rotation, took calls for insurance from customers. The agent was a general agent and many, if not all, of the policies ordered by customers were prepared at another office of the carrier and there was usually a delay of from three weeks to a month in the issuance of policies, as "they've all been way behind due to shortage of help". The customer whose policy was thus delayed "would sort of depend on the fact that he ordered the policy and that in due course it would come through and be billed to him". The testimony quoted was that of the agent who, when asked whether an assured was covered from the moment of his order, said, "We assumed so, yes". It would seem that no other assumption would have permitted the agent to remain long in business, if no customer could be assured of protection in less than a month's time, and it is equally apparent that the carrier knew of the delays and of the agent's practice. It is of at least some moment that in addition to issuing workmen's compensation insurance policies to the employer both before and after the accident, the carrier accepted him as a risk on other types of coverage, including liability insurance on the motor equipment involved in the accident which gave rise to the claim here. There was received in evidence a certificate of the carrier's designation of the agent. We deem it significant that the carrier, although vigorously contesting the employer's claim and producing as a witness its supervising general agent, Mr. Flannagan, who had, in fact, appointed the agent here concerned, adduced no clear and direct proof of any limitation upon the agent's authority, Mr. Flannagan's testimony being merely that it was "understood" that this agent's policies would "clear through" Mr. Flannagan's office. Neither did it produce any evidence, in the form of an agency contract, a rule of the company, or otherwise, tending to define this agent's authority or that of its general agents as a class. It failed, also, to meet its own agent's testimony as to his customary practices and its recognition or nonrecognition of oral binders. The board's finding is, in our view, supported by substantial evidence. Decisions and award unanimously affirmed, with costs to employer respondent against the appellant carrier. Present — Foster, P. J., Coon, Halpern, Zeller and Gibson, JJ.